## William A. Gray v. Eliot Callender.

81 547
181s 173

1. AGENT—*Liability for Money Lost in Transmission.*—An agent who receives money from the maker of a promissory note for interest due to the holder, who was unknown to him at the time, but upon the assumption that his principal was the holder, and, under the direction of the maker, remits the money to him, is not liable for its loss.

2. PROPOSITIONS OF LAW—*Harmless Error in Refusing.*—Where a plaintiff offers a proposition of law which is erroneously refused, if the proofs show that he was not entitled to recover, the failure to hold the proposition as the law works no injury to him, and the refusal is harmless error.

Assumpsit, for money had and received. Trial in the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Find-

ing and judgment for defendant; appeal by plaintiff. Heard in this
court at the December term, 1898. Affirmed. Opinion filed April 11,
1899.

DAN R. SHEEN, attorney for appellant, contended that
appellee received the money, as was mutually understood, to
be credited in payment of interest on the $20,000 indebted-
ness evidenced by the promissory notes, payable to Van
Marter. And the money not having been applied for the
purpose for which it was received, and there being no priv-
ity of contract between any one except between appellant
and appellee, appellee is liable. Parker v. Fuller, 39 Ill. 164;
Drover's Bank v. O'Hare, 119 Ill. 646; Hall v. Carpen, 27 Ill.
386, and 29 Ill. 512.

Money paid by one party to another through a mutual mis-
take of facts of which both were equally bound to inquire,
may be recovered back. Wolf v. Beaird, 123 Ill. 585.

STEVENS, HORTON & ABBOTT, attorneys for appellee.

An agent to whom money has by mistake been voluntarily
paid, for the use of his principal, is not liable to the person
so paying it, where, before notice of such mistake, he has
paid it over to his principal. In such event the person pay-
ing it must look to the principal. If the agent, before pay-
ing the money, is notified not to pay it over, and he does so
in violation of the notice, he would be liable. Mechem on
Agency, Sec. 561.

It is held that where money has been voluntarily paid to
an agent, and by him forwarded to his principal, without
notice from the payor, he can not be held liable for the
amount, no matter if the money was paid by mistake. The
party paying it must look to the principal for its recovery.
Elliott v. Swartwout, 10 Peters, 153; see also Bailey v.
Cornell (Mich.), 33 N. W. Rep. 50; Wallis, Rec., v. Shelly
et al., 30 Fed. Rep. 748; Hearsey v. Pruyn, 7 Johns. 179;
Law et al. v. Nunn, 3 Ga. (Kelly's Reps.) 90; Cooley v.
Willard et al., 34 Ill. 68; Viskocil v. Doktor, 27 Ill. App. 233.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of
the court.

On November 21, 1894, William A. Gray paid Eliot Cal-

lender $1,200. Gray claims Callender so applied the money that it did not extinguish certain interest as it should have done, which interest he was afterward, by judicial proceedings, compelled to pay another party. He brought this suit in assumpsit against Callender to recover said $1,200 and interest thereon. Defendant pleaded non-assumpsit. A jury was waived, proofs were heard, the trial judge gave judgment against plaintiff and the latter appeals.

On November 16, 1892, Gray bought real estate in Peoria of James G. Van Marter, and to evidence part of the consideration gave Van Marter his five notes of that date for $4,000 each, payable at the Dime Savings Bank, Peoria, with interest at six per cent per annum payable annually, and secured said notes by a mortgage upon the property. Gray testified the notes were payable in one, two, three, four and five years from date, but the record evidence seems to show they were payable in two, three, four, five and six years. Callender acted as agent for Van Marter in the transaction, and Van Marter left the notes, mortgage and insurance policies with Callender. In November, 1893, Gray paid the annual interest to Callender and such interest was duly indorsed upon the notes. Thereafter at Van Marter's request Callender tried to sell the notes or borrow money upon them for Van Marter, but was unable to do so. Van Marter then came to Peoria and got the notes from Callender, leaving the mortgage and insurance policies in his hands. In January, 1894, Van Marter wrote Callender from New York that he had arranged to put up the notes as collateral and Callender need not look further to dispose of them. Van Marter assigned and delivered the notes to William W. Story, of Rome, Italy, as collateral security for a loan of $15,000, and executed two other instruments to said William W. Story, one an assignment of the notes and mortgages to secure $15,000, and the other an assignment of the mortgage to secure $15,000 and future advances. The first assignment was recorded in Peoria county on January 26, 1894, and the second on April 7, 1894.

. Callender was engaged in the banking and real estate

business, and in November, 1894, in the usual course of business, sent two notices by mail to Gray, the first notifying him there was $1,200 interest due on his loan, and the second that there was $4,000 of the principal, and $1,200 interest due November 16, 1894. After receiving these notices Gray went to Callender's office two or three times. The first time he took there a check for $5,200, intending to take up the first note and pay the interest on the other notes. The notes were not there and he went away. He testifies he came back a few days later with the same check and again took it away with him. Callender denies this second call with the $5,200 check. A couple of days later Gray went again with a check for $1,200, the amount of the interest, and delivered it to Callender, and took a receipt for it. Callender took out $15, which Van Marter owed for the insurance, and pursuant to a letter from Van Marter as to the place to which it should be sent, remitted $1,185 to a bank at Tacoma, Washington, to the credit of Van Marter, and that sum was received and so credited by said bank. Van Marter at that time lived in the State of Washington. At a later date, William W. Story assigned said notes and mortgage to his son, Thomas Waldo Story, and the latter filed a bill to foreclose the mortgage. Gray set up the payment of the said $1,200 to Callender in defense, but the payment was not allowed, and decree went against Gray for the full amount due upon the face of the papers, including said $1,200, and Gray paid it and then brought this suit against Callender.

The material question is, what was said between Gray and Callender at their two or three interviews in November, 1894. Upon that they disagree in part. It is clear Callender told Gray he did not have the notes and told him that he (Gray) could not be compelled to pay further interest on the $3,000 then due, as he had been ready to pay it at maturity. A consideration of Gray's entire testimony on direct and cross-examination and in rebuttal shows that he admits that before he paid the $1,200, Callender told him Van Marter had put up the notes as collateral and that

he did not know with whom they had been so placed. This is also proved by defendant and by his son Joseph. It is established by each witness that Callender told Gray the notes had been, by Van Marter, put up with some eastern parties as collateral. There was no suppression or concealment of the fact. Gray and Callender each testified he was at that time ignorant of the assignments then upon the records of Peoria county. It is clear that in paying the $1,200 Gray intended it as a payment of the annual interest then due, and that Callender so understood it. The real question in dispute is whether Gray left it to Callender to see that the money reached its proper destination and was properly credited, or whether Gray directed Callender to send the money to Van Marter. Gray testified that the suggestion that he pay the $1,200 to Callender came from Callender, and that he simply paid it as interest without any further directions. Callender and his son testified that the proposal to pay the $1,200, notwithstanding the notes were not there and were held by unknown parties, came from Gray, and that Gray directed that the money be sent to Van Marter. Defendant testified as to this interview, that Gray came in with a check for $1,200 and said he had changed his mind about paying the note and would like to have the time extended, and for Callender to write Van Marter and see if he could not get the time of the payment of the note extended, that he had some other use he had to make of the money, for improvements or something of that kind; that Gray said, " We will send the old fellow the interest and perhaps that will 'make him give us more time on the principal;" that he did not demand the interest of Gray; that it was by Gray's suggestion it was paid, and it was in accordance with Gray's instruction that he sent the money to Van Marter. Van Marter had written to him to send the interest to the bank at Tacoma for Van Marter's credit, and Callender accordingly sent it to that bank. Joseph E. Callender, son and partner of the defendant, testified he was present at both interviews and that at the second Gray asked them to remit the $1,200 to Van Marter and see if after he paid the interest he could not get an extension of

the $4,000 note then due. The receipt Callender gave and Gray accepted for the $1,200, corroborates defendant, for it is signed " James G. Van Marter, by Eliot Callender." If it was Gray's understanding that Callender was to see the money paid, not to Van Marter, but to the person who held the notes as collateral, he would not have been likely to accept a receipt in the name of Van Marter without question. If, however, he directed the money to be sent to Van Marter the receipt was in harmony with that direction. We have therefore the testimony of two witnesses that Gray, when he paid the $1,200 to Callender, directed Callender to send the money to Van Marter, corroborated by the fact that Callender gave and Gray accepted a receipt signed in the name of Van Marter ; and against this is the evidence of Gray alone, that he did not so direct. We can not say that under such state of proof the trial judge (who had the advantage over us of seeing the witnesses and hearing them testify) erred in finding that Gray directed the $1,200 sent to Van Marter. If Gray, with the knowledge that the notes were held by some unknown party in the east, directed Callender to send the money to Van Marter, then Callender obeyed his instructions and is not responsible for the loss which resulted, but Gray is left to look to Van Marter for reimbursement. We think it not material that $15 of the money was applied on a debt Van Marter owed instead of being remitted to Van Marter.

Plaintiff offered three propositions of law. The court marked each " refused," and also stated in the bill of exceptions that the court refused to so hold because in the opinion of the trial judge the propositions were not applicable to the facts. They were not applicable to the facts as established by the preponderance of the evidence, but we are of opinion that at least two of them were applicable to the case which plaintiff's evidence tended to establish, and they should therefore have been marked " held;" but as upon the proofs plaintiff was not entitled to recover, the failure to hold said propositions as the law, worked no injury to plaintiff and ought not to reverse a correct conclusion. The judgment is therefore affirmed.